**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| : | |
| **DORIS GRIFFIN, on behalf of herself** : | |
| **and all others similarly situated,** : | |
| : | **Civil Action No. 16-1234 (ES) (MAH)** |
| **Plaintiff,** : | |
| : | **OPINION** |
| **v.** : | |
| : | |
| **M.L. ZAGER, P.C.; and JOHN** : | |
| **DOES 1-25** : | |
| : | |
| **Defendant.** : | |
| : | |

**SALAS, DISTRICT JUDGE**

    This case arises from alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*  Pending before the Court are two motions: (1) a joint motion for final approval of a settlement between Plaintiff Doris Griffin ("Griffin" or "Plaintiff") and Defendant M.L. Zager, P.C. ("Zager" or "Defendant") (D.E. No. 27 ("Settlement Br.")); and (2) Settlement Class Counsel's motion seeking an award of reasonable costs, attorneys' fees, and statutory damages. (D.E. No. 26 ("Fee Br.")).  On June 13, 2017, the Court held a Fairness Hearing. (D.E. No. 28 ("Fairness Hearing")).  The Court received no objections, nor are there any opt-out requests.

    For the reasons set forth in this Opinion, the Court certifies the class for purposes of settlement, grants final approval of the proposed settlement, and awards costs, attorneys' fees, and statutory damages.

# I. FACTUAL & PROCEDURAL BACKGROUND

On March 30, 2011, Griffin incurred a financial obligation to "Andrew S. Quirk, P.T., P.A."[1] ("Quirk"). (*See* D.E. No. 1 ("Compl.") ¶ 15). Some time between March 30, 2011 and January 29, 2016, Griffin defaulted on the financial obligation. (*Id.* ¶¶ 19-21).

To collect on the debt, Quirk placed the financial obligation with Zager. (*Id.* ¶ 19). On January 29, 2016, in an attempt to collect on the debt, Zager sent a letter to Griffin. (*Id.* ¶ 23). The letter stated that Zager was a "firm" that was "retained to contact [Griffin] regarding payment" of the debt owed to Quirk. (*Id.* ¶ 27).

No attorney with Zager signed the letter sent to Griffin. (*Id.* ¶ 30). The Complaint alleges that neither Zager nor any attorney employed by Zager "was licensed to practice law in New Jersey as of January 29, 2016." (*Id.* ¶¶ 31-33).

Griffin asserts that Zager violated the FDCPA in three ways. First, Griffin states that Zager violated 15 U.S.C. § 1692e(3) because the letter falsely represented or implied it was a communication from an attorney. (*Id.* ¶¶ 45-46). Second, Griffin claims that Zager violated 15 U.S.C. § 1692e(5) "by falsely implying that [Zager] was retained to file a lawsuit against [her] and others similarly situated." (*Id.* ¶ 52). Third, Griffin claims that Zager violated 15 U.S.C. § 1692e(10) "by falsely representing that an attorney was meaningfully involved in the collection process and by falsely implying that [Zager] was retained to file a lawsuit against" her. (*Id.* ¶ 54). In sum, Griffin alleges that Zager's letter violated the FDCPA as to her and a class of similarly situated New Jersey consumers to whom it was sent.

Soon after Zager answered Griffin's Complaint (D.E. No. 7), the parties conducted formal and informal discovery. (D.E. Nos. 15, 16).

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

On August 30, 2016, the parties informed the Court that they reached a class-wide settlement and that they intended to move for preliminary approval. (*See* D.E. No. 19). On December 23, 2016, the parties jointly moved the Court to preliminarily approve their class action settlement. (D.E. No. 22).

On January 23, 2016, the Court held a hearing on the parties' joint motion. (D.E. No. 23). The Court then issued an order granting the parties' motion. (D.E. No. 25). That order effectuated the following (among other things): (1) certification of a class for settlement purposes; (2) preliminary approval of the class settlement; (3) appointment of settlement class counsel; (4) appointment of a Claims Administrator; (5) approval of forms and procedures for class notice; and (6) appointment of Griffin as the Class Representative. (*Id.*).

Pursuant to the Court's order, the Class was defined as follows: "All consumers in the State of New Jersey to whom Zager sent a written communication which is materially similar to the form attached as Exhibit A to Plaintiff's Complaint, in an attempt to collect a debt, which was not returned as undeliverable by the United States Post Service, during the period beginning March 3, 2015 to March 3, 2016." (*Id.* ¶ 1(a)).

## II. OVERVIEW OF THE PROPOSED SETTLEMENT & RESPONSE

The proposed Settlement Agreement provides that Zager will create a "Settlement Fund" of $3,000. (D.E. No. 27-1, Ex. A ("Settlement Agreement") ¶ 11(a)). "Settlement Class Members" are defined as "[a]ll persons in the State of New Jersey to whom Zager sent a written communication which is materially similar to the form attached as Exhibit A to Plaintiff's Complaint, in an attempt to collect a debt, which was not returned as undeliverable by the United States Post Service, during the period beginning March 3, 2015 to March 3, 2016." (*Id.* ¶ 8). Based on discovery, the parties estimate there are approximately 124 individuals in the Settlement

Class.  (*Id.* ¶ 9).

Further, the parties agreed that Zager will pay all costs incurred by the Claims Administrator in the course of providing the Class Notice and other services related to the administration and payment of the Settlement.  (See *id.* ¶ 11(c)).  The parties also agreed that Class Counsel would move the Court for attorneys' fees and that "Zager agrees to pay Class Counsel $28,000 as reasonable attorneys' fees and costs incurred." (*Id.* ¶ 11(e)).[2]

On February 14, 2017, the Class Administrator served, among other things, the "Notice of Proposed Class Action Settlement" and a Proof of Claim on individuals in the Settlement Class. (D.E. No. 27-1, Ex. C ("Class Admin. Aff.") ¶ 3).  Of the 232 notices sent out, the Class Administrator received 27 completed proof-of-claim forms.  (*Id.* ¶¶ 4, 7).

On June 13, 2017, the Court held a Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).  (*See* Fairness Hearing).  At the Fairness Hearing, no objectors appeared.  As of the date of this Opinion, there are no exclusion requests or objections to the settlement.  (*See also* Class Admin. Aff. ¶¶ 4-8).

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions ("In re Prudential II")*, 148 F.3d 283, 299 (3d Cir. 1998).

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors*

---

[2]     In addition, the parties agreed that: "Zager shall pay $1,000 to Plaintiff for her statutory damages pursuant to 15 U.S.C. 1692k(a)(2)(B)(i)." (*Id.* ¶ 11(b)).

*Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GM Truck Prods.")*, 55 F.3d 768, 784 (3d Cir. 1995). Nevertheless, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010); *see also In re Pet Food Prods. Liab. Litig. ("In re Pet Food")*, 629 F.3d 333, 349 (3d Cir. 2010) ("We have stressed the importance of Rule 23(e), noting that a district court acts as a fiduciary, guarding the claims and rights of the absent class members.").

## IV. DISCUSSION

### A. Whether Class Certification is Appropriate for Purposes of Settlement

"When deciding a motion for settlement, the Court must first determine whether the settlement class is appropriate for certification and then turn to whether the settlement itself should be approved." *Alin v. Honda Motor Co.*, No. 08-4825, 2012 WL 8751045, at *2 (D.N.J. Apr. 13, 2012).

Federal Rule of Civil Procedure 23 "is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). "[A]ctions certified as settlement classes must meet the same requirements under Rule 23 as litigation classes." *GM Truck Prods.*, 55 F.3d at 799.

Accordingly, the Court "first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *In re Pet Food*, 629 F.3d at 341. As discussed below, the Court finds that the Settlement Class meets the Rule 23(a) and 23(b)(3) requirements.

## 1. Rule 23(a): numerosity, commonality, typicality & adequacy of representation

Federal Rule of Civil Procedure 23(a) provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are referred to as: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re Prudential II*, 148 F.3d at 308-09.

### i. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "There is no minimum number of members needed for a suit to proceed as a class action," and "Rule 23(a)(1) requires examination of the specific facts of each case." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). "To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig. ("Prudential I")*, 962 F.Supp. 450, 510 (D.N.J. 1997).

Here, the numerosity requirement is satisfied. The Settlement Class consists of 124 potential plaintiffs. (Settlement Agreement ¶ 9). Although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," if Griffin demonstrates "that the potential number of plaintiffs exceeds 40," the numerosity requirement is met. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Since the Settlement Class far exceeds 40, "common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential I*, 962 F.Supp. at 510. Accordingly, the numerosity requirement has been satisfied.

### ii.  Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that "there are questions of law or fact common to the class."  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention" that "is capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The contention is capable of "classwide resolution" if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*; *see also In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 371 (E.D. Pa. 2015) ("The [commonality] standard is not stringent; only one common question is required."), *aff'd*, 821 F.3d 410 (3d Cir. Apr. 18, 2016).

Here, the issues underlying Griffin's claim is common to all class members.  Factually, Griffin and all class members would have to prove that Zager sent out the letter.  Moreover, the common legal question underlying Griffin's and class members' claims is whether Zager violated the FDCPA by, among other things, falsely representing or implying its letter was a communication from an attorney.  (*See* Compl. ¶¶ 45-46).  Since Griffin "share[s] at least one question of fact or law with the grievances of the prospective class," the commonality requirement is satisfied.  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

### iii.  Typicality

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004).  "The typicality criterion is intended to

preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57. "However, typicality, as with commonality, does not require that all putative class members share identical claims." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 531-32. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58.

Here, Griffin's interests "align with the interests of the absent [class] members." *Stewart*, 275 F.3d at 227. As the parties note, "Plaintiff and the Settlement Class members' claims directly arise out of the common practice of Zager in sending letters with the challenged content." (Settlement Br. at 12). Thus, since there is a "strong similarity of legal theories," the typicality requirement is satisfied. *Baby Neal*, 43 F.3d at 58.

### iv.    Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "has two components designed to ensure that absentees' interests are fully pursued." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532.

The first component is the "adequacy inquiry." *See id.* "[T]he adequacy inquiry tests the qualifications of the counsel to represent the class." *Id.*; *see also GM Truck Prods.*, 55 F.3d at 801 ("Courts examining settlement classes have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant.").[3]

---

[3]    As another court in this District rightly noted, "[a]s a result of the 2003 amendments to the Federal Rules of Civil Procedure, the issue of appropriate class counsel is guided by Rule 23(g), rather than 23(a)(4)." *In re Royal*

Here, the Court finds that Class Counsel is an adequate representative for class members. Class Counsel has significant experience in class actions, especially FDCPA class actions. (*See* Settlement Br. at 14-15). Class Counsel's practice is "concentrated in the area of Consumer Protection Law involving matters of the FDCPA, Fair Credit Reporting Act and the New Jersey Consumer Fraud Act." (*Id.* at 15). Moreover, over the past ten years, courts have appointed Class Counsel as counsel for approximately 16 class actions involving FDCPA claims. (*Id.* at 14-15). Thus, the Court finds that Griffin's counsel is qualified to represent the interests of the class.

The second component of Rule 23(a)(4) requires the Court to "uncover conflicts of interest between named parties and the class they seek to represent." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532. Importantly, the inquiry here tends to merge with the "typicality" inquiry above in that "certain questions . . . are relevant under both." *Beck v. Maximus*, 457 F.3d 291, 296, (3d Cir. 2006). Here, the Court cannot discern any conflict of interest between Griffin and the class she seeks to represent. (*See* Settlement Br. at 13). Indeed, for essentially the same reasons articulated above, the Court cannot find any purported conflicts of interest that preclude class certification in this case. Thus, the adequacy of representation requirement is satisfied.

## 2. Rule 23(b)(3): Predominance & Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that: "[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These "twin

---

*Dutch/Shell Transp. Sec. Litig.*, No. 04-374, 2008 WL 9447623, at *14 n.3 (D.N.J. Dec. 9, 2008) (citation omitted). As in that case, however, "[f]or the sake of convenience . . . the adequacy of counsel is discussed here." *Id.*

requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

### i. Predominance

"Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan*, 667 F.3d at 297. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298.

Here, the Court concludes that the predominance requirement is satisfied because whether Zager's letter violated the FDCPA lies at the core of Griffin's and class members' claims. Indeed, Zager's "conduct was common as to all of the class members" and "all of the class members were harmed by [Zager's] conduct." *Id.* All the letters Zager sent out to the class members contained similar language. (Settlement Br. at 16). After sending these letters, Zager allegedly violated the FDCPA and caused a common injury to all class members. (*Id.*). Thus, the Court can "distill that each class member shares a similar legal question arising from" whether the language contained in Zager's letter violated the FDCPA. *Sullivan*, 667 F.3d at 300. Accordingly, the predominance requirement is satisfied.

### ii. Superiority

"The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34.  Class litigation is superior to other methods of adjudication when it would "not be practicable . . . to undertake the individualized inquiries necessary for the potential claims." *Merlo v. Fed. Express Corp.*, No. 07-4311, 2010 WL 2326577, at *8 (D.N.J. June 7, 2010).

Here, the Court finds that a class action is the superior method of adjudicating these claims because "the modest nature of the claims render a class action superior to alternative methods of adjudication." *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 202 (D.N.J. 2014).  In the FDCPA context, the Third Circuit has observed that "[r]epresentative actions . . . appear to be fundamental to the statutory structure of the FDCPA" because "the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).  Class Counsel echoes these observations: "[I]n light of the relatively small amount of actual and statutory damages," Class Counsel argues that the issues in this case "outweigh[] the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone." (Settlement Br. at 16).  In light of the Third Circuit's observations and the relatively small amount of actual and statutory damages otherwise available to the individual class members, the Court finds that the superiority element is satisfied.

### B. Analysis of the *Girsh* factors

Federal Rule of Civil Procedure 23(e)(2) provides that, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable,

and adequate." "In this process, trial judges bear the important responsibility of protecting absent class members, and must be assured that the settlement represents adequate compensation for the release of the class claims." *Sullivan*, 667 F.3d at 319. And, "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, . . . district courts . . . [should] be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 534.

In so doing, the Court must consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also GM Truck Prods.*, 55 F.3d at 785; *McDonough v. Horizon Healthcare Servs., Inc.*, No. 09-571, 2014 WL 3396097, at *4 (D.N.J. July 9, 2014) ("The key question the Court must address in considering an application for approval of a class action settlement is whether the proposed settlement is 'fair, reasonable and adequate.' The Third Circuit has set forth a number of factors relevant in making this determination [which are known as] the '*Girsh* factors . . . .'"), *aff'd sub nom. McDonough v. Horizon Blue Cross Blue Shield of New Jersey*, 641 F. App'x 146 (3d Cir. 2015).

The Third Circuit also suggests courts to consider whether the settlement satisfies several additional factors set forth in *Prudential II*. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-8020, 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016). The *Prudential II* factors include:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison

between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* Here, the Court finds that the proposed settlement satisfies the *Girsh* factors and relevant *Prudential II* factors.

### (1) The first *Girsh* factor: the complexity, expense and likely duration of the litigation

"This factor captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Yedlowski*, 2016 WL 6661336, at *12.

Although the case is just over a year old, the parties face significant costs in both time and money if the Court does not to approve this settlement. As the parties note, in addition to formal discovery, the parties would be required to litigate final class certification. Even if final class certification was upheld on appeal, the parties would litigate motions for summary judgment and possibly trial. Considering the significant expense inherent in continuing to litigate this case, the Court "finds the immediate and guaranteed benefits of the settlement would be the better option in this case." *Dorrance v. ARS Nat. Services, Inc.*, No. 12-2502, 2015 WL 2213514, at *5 (M.D. Pa. May 11, 2015). Thus, this factor weighs in favor of settlement.

### (2) The second *Girsh* factor: the reaction of the class to the settlement

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *GM Truck Prods.*, 55 F.3d at 812. A "vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in

favor of the Settlement, and the objectors' arguments otherwise are not convincing." *In re Cendant Corp. Litig.*, 264 F.3d at 235.

This factor also weighs in favor of settlement. Out of 124 potential class members, no members have formally objected or opted out. (Settlement Agreement ¶ 9). The fact that no member objected or opted out of the settlement weighs heavily in favor of settlement.

### (3) The third *Girsh* factor: the stage of the proceedings and the amount of discovery completed

"This factor captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at 235. "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties . . . . Indeed, courts in this district have approved settlements while the case was in the pre-trial stage and formal discovery had not yet commenced." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

Here, the Court is satisfied that the parties have an "adequate appreciation of the merits of the case." *In re Cendant Corp. Litig.*, 264 F.3d at 235. Although the case is just over a year old, the Third Circuit has observed that, "[i]n some cases, informal discovery will be enough for class counsel to assess the value of the class claims and negotiate a settlement that provides fair compensation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016). As the parties note, they commenced settlement discussions after the pleadings were completed. (Settlement Br. at 21). Soon after, the parties began to "exchange[] substantial information and documentation both formally and informally" and "undert[ook] legal research and investigation[s]" to understand the risks and exposures of both sides. (*Id.*). Thus, this factor

weighs in favor of settlement because the parties appear to have "a firm understanding of the strengths and weaknesses of the case." (*Id.* at 22).

### (4) & (5)  The fourth and fifth *Girsh* factors: the risks of establishing liability & the risks of establishing damages

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Truck Prods.*, 55 F.3d at 814. The fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id.* at 816. So, "[t]he fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential II*, 148 F.3d at 319.

Both factors weigh in favor of settlement. Regarding establishing liability, Class Counsel notes that she would need to prove that Zager violated the FDCPA with its letter—a claim that Zager disputes. (Settlement Br. at 22). Indeed, Zager vigorously contests liability. (*Id.*). The proposed settlement eliminates any risk of the uncertainty of a jury finding on liability. Thus, this factor weighs in favor of settlement.

Moreover, even if Griffin establishes liability, the amount of damages Griffin or the class would be able to recover is uncertain. Actual damages are unclear and, therefore, Griffin—and the class—would be limited to statutory damages. Indeed, the damages Griffin and the class may recover are limited to the lesser of $500,000 or 1% of the net worth of Zager. *See* 15 U.S.C. § 1692k(a)(2)(B). Since Zager would likely contest its net worth, "[e]stablishing net worth at trial would most likely be a battle of the experts, and ultimately a jury question." *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 753 (D.N.J. 2009). To be sure, the Settlement Fund represents a recovery equal to 1% of $300,000. Thus, since there is a risk that Griffin and the class will not be

able to establish Zager's net worth at an amount great enough to allow damages equal to the Settlement Fund, the Court finds that this factor weighs in favor of settlement.

**(6) The sixth *Girsh* factor: the risks of maintaining the class action through the trial**

"Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Prudential II*, 148 F.3d at 321. Notably, "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *GM Truck Prods.*, 55 F.3d at 817. But "[t]here will always be a risk or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential II*, 148 F.3d at 321.

Nevertheless, in light of the Court's Rule 23 analysis above, the Court cannot find that the class would be vulnerable to decertification or modification at a later stage in the litigation. Griffin's theory of liability is straightforward and turns on a legal issue that affects all class members in the same way. Since the legal issue is so narrow for all class members, the Court finds that there is a reduced likelihood of issues arising from Rule 23 certification factors. Thus, this factor is neutral.

**(7) The seventh *Girsh* factor: the ability of the defendants to withstand a greater judgment**

This factor "is concerned with whether the defendant[] could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240.

The Court finds that this factor weighs in favor of settlement. In their papers, the parties did not adequately address whether Zager could withstand a greater judgment. (*See* Settlement Br. at 24). During the June 13, 2017 fairness hearing, however, the parties explained that Zager was a "small law firm" and that a greater judgment "would significantly affect their business.

(Fairness Hearing at 16:5-8). Based on these representations, the Court finds that this factor weighs in favor of settlement.

> **(8) & (9) The eighth and ninth _Girsh_ factors: the range of reasonableness of the settlement fund in light of the best possible recovery &**
> **the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation**

"The last two _Girsh_ factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." _In re Prudential II_, 148 F.3d at 322; _see also Pro v. Hertz Equip. Rental Corp._, No. 06-3830, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) ("The final two _Girsh_ factors are typically considered in tandem."). In other words, the "last two _Girsh_ factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." _Warfarin Sodium Antitrust Litig._, 391 F.3d at 538. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." _In re Prudential II_, 148 F.3d at 322 (quoting _GM Truck Prods._, 55 F.3d at 806). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." _In re Cendant Corp. Sec. Litig._, 109 F. Supp. 2d 235, 263 (D.N.J. 2000).

As explained above, the Court has already reasoned that the settlement represents a good recovery to the class in light of the risks of continued litigation. Indeed, the proposed settlement provides monetary relief to class members who, without class certification, would have received nothing. The proposed settlement allows class members to recover some monetary relief without the attendant risks of continued litigation. Accordingly, these factors weigh in favor of final approval of the settlement.

## Summary of *Grish* Factors

"The district court must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food*, 629 F.3d at 350. Having made its findings, the Court concludes that the *Girsh* factors weigh in favor of approval of the Settlement. It is fair, reasonable, and adequate given the risks, complexities, potential expenditures associated with the case.

### C. Whether Notice is Adequate

Federal Rule of Civil Procedure 23 "contains two distinct notice provisions." *In re Prudential II*, 148 F.3d at 326. "For classes certified under 23(b)(3), members must be provided with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Weissman*, 2015 WL 3384592, at *4 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Further, because the parties seek simultaneous certification of the Class and approval of the proposed Settlement, "notice must satisfy both the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1)." *In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. at 382-83.

Federal Rule of Civil Procedure 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." This Rule further provides that

> the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The Rule 23(e) notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential II*, 148 F.3d at 327. Notably, due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Court finds that notice—both in terms content and in method of dissemination— was "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Regarding the method of dissemination, the Court's Order granting preliminary approval of the settlement directed notice be "mailed to the last known address of the Settlement Class Members as shown in Zager's business records." (D.E. No. 25). Consistent with the Court's Order, the Class Administrator represented that it mailed 232 notices to class members, only 10 of which were returned as undeliverable. (Class Admin. Aff. ¶¶ 4-7).

Moreover, the notice sent by the Class Administrator contained sufficient information to apprise them of the case and their rights. (*See* D.E No. 27-1, Ex. B ("Class Notice")). In clear, easy to read language, the notices informed class members that they had a right to object or exclude themselves from the settlement by mailing a letter to the Class Administrator by April 10, 2017. (*Id.*). Given the clarity and comprehensiveness of the notice, the Court finds that the notice was adequate under the circumstances.

**D. Whether the Plan of Allocation is Appropriate (a.k.a. Plan of Distribution)**

"The Court must determine whether the Plan of Allocation contemplated in the Settlement Agreement is fair, reasonable, and adequate." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 147 (D.N.J. 2013) (quoting Fed. R. Civ. P. 23(e)(2)).

Here, Settlement Class Members will be entitled to a pro rata share of the Settlement Fund—i.e., each of the 27 claimants will receive $111.11. (*See* Settlement Agreement ¶ 11(a); *see also* Class Admin. Aff. ¶ 7). Further, the parties nominated the National Consumer Law Center[4] as a *cy pres* recipient—which would receive money left in the Settlement fund following the expiration of the checks. (*See* Settlement Agreement ¶ 11(d)). The National Consumer Law Center is a nonprofit organization that advocates "for consumer justice and economic security for low-income and other disadvantaged people."[5] This *cy pres* award serves the objectives of the FDCPA. *See Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2015 WL 505400, at *10 (E.D. Pa. Feb. 6, 2015) (holding that *cy pres* award to nonprofit organization dedicated to financial literacy serves the objectives of the FDCPA).

Lastly, separate and apart from the Settlement Fund, Zager agreed to provide Griffin with $1,000—the maximum amount of statutory damages recoverable under the FDCPA. (*See* Settlement Agreement ¶ 11(b)); *see also* 15 U.S.C. § 1692k(a)(2)(A). The FDCPA provides, in relevant part, that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). But the FDCPA also provides that, "any debt collector who

---

[4]     National Consumer Law Center, 7 Winthrop Square, Boston, MA 02110-1245.
[5]     *See* National Consumer Law Center, https://www.nclc.org/about-us/about-us.html (last visited July 25, 2017).

fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members." *Id.* § 1692k(a)(2)(B). Thus, the award appears to be appropriate under the FDCPA. *See id.*; *cf. Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *15 (D.N.J. Sept. 10, 2013) (approving settlement agreement providing the plaintiff with $1,000 in satisfaction of her statutory claims under the FDCPA).

In sum, the Court finds that there are no apparent issues with the plan of distribution.

## VI. ATTORNEYS' FEES/COSTS & INCENTIVE AWARD

Settlement Class Counsel seeks an award of reasonable costs, attorneys' fees, and an incentive award. (*See* Fee Br.). Specifically, Settlement Class Counsel requests the following:-(1) $28,000 in attorney fees and costs; and (2) $1,000 in an incentive award to the named Plaintiff. (*Id.* at 3).

### A. Attorneys' Fees & Costs

Here, Zager has agreed to pay Class Counsel up to $28,000 for fees and expenses as part of the Settlement Agreement. (Settlement Agreement ¶ 11(e)).

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or ***by the parties' agreement***." (emphasis added). Rule 23(h) further provides, in relevant part, that the following procedures apply:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

As courts in this district have explained:

> "The Court must analyze the attorneys' fee provision under Rule 23(e) in much the same fashion as the settlement itself. Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate, and reasonable."

*Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *18 (D.N.J. Sept. 10, 2013).

The FDCPA has a fee shifting provision permitting recovery of costs and reasonable attorneys' fees. *See* 15 U.S.C. § 1692k(a)(3).

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." *In re Prudential II*, 148 F.3d at 333. "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Id.*; *see also Alexander v. Coast Professional Inc.*, No. 12-1461, 2016 WL 861329, at *7 (E.D. Pa. Mar. 7, 2016) ("Because the FDCPA is a fee shifting statute, this Court will apply the lodestar method in determining the reasonableness of the requested award of attorneys' fees.").

 "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305; *see also Alexander*, 2016 WL 861329, at *7 ("Under

the lodestar method, a court begins the process of determining the reasonable fee by calculating the 'lodestar;' i.e., the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community . . . . The court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary." *Id.*

Class Counsel submits its fees under the lodestar analysis, but have capped their request at $28,000 as part of the Settlement Agreement. (*See* Fee. Br. at 4; *see also* Settlement Agreement ¶ 11(e)). Class Counsel has provided the Court with time sheets that he contemporaneously maintained to demonstrate the amount of time expended on the case. (*See* D.E. No. 26-1, Ex. A ("Time Sheet")). After reviewing the time sheet, the Court finds that Class Counsel spent a reasonable number of hours litigating this case.

As to the hourly rate charged, Class Counsel has submitted a certification attesting to his qualifications. (*See* D.E. No. 26-1 ("Jones Cert.")). Given the qualifications of Class Counsel, the Court finds that the hourly rates charged by Class Counsel are reasonable. (*Id.* at 2-3). The Court finds that, under the lodestar method, Class Counsel has accrued $34,720.84 in fees through the course of this litigation. The Court also notes that Class Counsel has litigated this matter on a contingency basis with no payment rendered for their services to date. (*Id.* at 4). Moreover, the

parties did not discuss attorneys' fees and costs until after they reached a class-wide settlement. (Fee Br. at 3). Neither Zager nor any class member has objected to these fees.[6]

Thus, the Court agrees with the parties that Class Counsel should receive $28,000 in attorneys' fees and costs because it is fair and reasonable, and commensurate with the benefit conferred upon the class.

## VII. CONCLUSION

For the reasons in this Opinion, the Court certifies the class for purposes of settlement, approves the proposed settlement, approves the requested attorneys' fees and costs, and approves the damages award to Griffin. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[6]    The Court notes that the class was advised that Class Counsel would seek an award of $28,000 in attorneys' fees and costs. (*See* Class Notice).